UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

VICTOR L. JORDAN,

    Plaintiff,

v.                                                              CAUSE NO. 3:23-CV-173 DRL

CECIL,

    Defendant.

OPINION AND ORDER

Victor L. Jordan, a prisoner without a lawyer, is proceeding in this case against Sergeant Robert Cecil in his individual capacity for compensatory and punitive damages for using the emergency restraint chair without justification on February 2, 2023, and February 8, 2023, in violation of the Fourteenth Amendment. ECF 20 at 6. On April 29, 2024, Sgt. Cecil filed a motion for summary judgment. ECF 30. With the motion, Sgt. Cecil provided Mr. Jordan the notice required by N.D. Ind. L.R. 56-1(f). ECF 33. Attached to the notice was a copy of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b), a party opposing a summary judgment motion must, within 28 days after the movant serves the motion, separately file (1) a response brief; and (2) a response to statement of material facts, which includes a citation to evidence supporting each dispute of fact. This deadline passed over five months ago, but Mr. Jordan has not responded. Therefore the court will now rule on Sgt. Cecil's summary judgment motion.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009).

To establish an excessive force claim under the Fourteenth Amendment, the plaintiff must show that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). In determining whether force was objectively unreasonable, courts consider such factors as the relationship between the need for force and the amount of force that was used, the extent of any injuries the plaintiff suffered, the severity of the security problem, the threat the officer reasonably perceived, and whether the plaintiff was actively resisting. *Id.* at 397.

A. *February 2, 2023 Incident.*

Sgt. Cecil provides an affidavit (ECF 31-1) and one from Deputy Kyle Mace (ECF 31-4), which show the following facts.[1] On February 2, 2023, Sgt. Cecil was in charge of the midnight shift at the LaPorte County Jail. ECF 31-1 at 1. Around 1:25 a.m., Mr. Jordan was brought into the jail by police officers. *Id.* at 1-2. Sgt. Cecil had dealt with Mr. Jordan on numerous previous occasions and knew he had a history of being disruptive by flooding his cell, threatening jail staff, banging on cell doors, and injuring himself by striking his cell door or other areas within his cell. *Id.* at 1.

When Mr. Jordan arrived in the sallyport, he complained he was having trouble breathing and was assessed by a nurse. *Id.* at 2. The nurse found Mr. Jordan's oxygen saturation and pulse were normal and determined he was fit to be accepted into the jail. *Id.* at 2. Because Mr. Jordan was known to be uncooperative in the past, five officers escorted him to the shower area so he could be dressed in jail clothing and then placed him in a temporary holding cell for observation. *Id.* While in the holding cell, Mr. Jordan became loud and began kicking the cell door. *Id.* Sgt. Cecil was concerned Mr. Jordan would injure himself like he had in the past, so he placed Mr. Jordan in handcuffs and escorted him to a cell in the S1 segregation block. *Id.* at 2-3. Sgt. Cecil placed Mr. Jordan in a segregation cell and removed his handcuffs, but as Sgt. Cecil was leaving the cell Mr. Jordan told him he was going to "tear this bitch up" and "bust the sprinkler." *Id.* at 3; ECF

---

[1] Because Mr. Jordan did not respond to Sgt. Cecil's summary judgment motion, the court accepts these attestations as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . .").

3

31-4 at 1-2. Sgt. Cecil was concerned Mr. Jordan was going to destroy property and hurt himself in the process like he'd done in the past, so he placed Mr. Jordan back in handcuffs, escorted him to the dayroom, and placed him in an emergency restraint chair (ERC). ECF 31-1 at 3. Mr. Jordan protested being placed in the ERC but was compliant and cooperative when strapped into the chair. *Id.* Deputy Mace checked on Mr. Jordan in the ERC at regular intervals. ECF 31-4 at 2. There is no evidence before the court showing how long Mr. Jordan was kept in the ERC on February 2.

Here, there's no evidence by which a reasonable jury could conclude Sgt. Cecil used "objectively unreasonable" force against Mr. Jordan by placing him an ERC on February 2, 2023. Specifically, it's undisputed that (1) Sgt. Cecil knew Mr. Jordan had a history of destroying property and injuring himself in the jail; (2) once Mr. Jordan was placed in a temporary holding cell, he became loud and began kicking his cell door; and (3) once Sgt. Cecil moved Mr. Jordan to a segregation cell, Mr. Jordan stated he was going to "tear [it] up" and "bust the sprinkler." Based on these undisputed facts, it was reasonable for Sgt. Cecil to take Mr. Jordan's threats seriously and restrain him in an ERC to ensure his safety and the safety of jail staff. *See Cibulka v. City of Madison*, 448 F. Supp. 3d 1002, 1024 (W.D. Wis. 2020) (holding the use of a restraint chair was not excessive where the person being restrained had "refused orders to cooperate, stand up, and walk out of the booking area to a segregation cell"); *Rice v. Correctional Medical Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (use of restraint chair was not excessive where the inmate fought with his cellmate and refused to comply with an order to leave his cell). And though it's unclear from the evidence how long Mr. Jordan was kept in the ERC on this occasion, it's

4

undisputed Deputy Mace checked in on him at regular intervals, and Mr. Jordan did not provide evidence he was kept in the ERC for an unreasonable amount of time. *See Goodman*, 621 F.3d at 654 (to survive summary judgment the plaintiff must "marshal and present the court with the evidence" he contends will prove his case); *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 744 (S.D. Ohio 2022) (plaintiff failed to state an excessive force claim where he didn't explain how long he was confined to the restraint chair). Because there's no evidence by which a reasonable jury could conclude Sgt. Cecil violated Mr. Jordan's Fourteenth Amendment rights by placing him in an ERC on February 2, 2023, summary judgment is warranted in favor of Sgt. Cecil on this claim.

    B. *February 8, 2023 Incident.*

Sgt. Cecil provides affidavits from himself (ECF 31-1), Corporal Timothy Mace (ECF 31-2), and Corporal Carlos Espinoza (ECF 31-3), which show the following facts. On February 8, 2023, around 4:43 p.m., Corporal Espinoza received a report that Mr. Jordan and another inmate were smoking in a cell. ECF 31-3 at 1. When Corporal Espinoza arrived at the cell, Mr. Jordan was refusing to gather his belongings so he could be transferred to the S1 segregation block. *Id.* The correctional officers placed Mr. Jordan in restraints and escorted him to the segregation unit, but Mr. Jordan started resisting and pulling away. *Id.* at 2. When Mr. Jordan reached the area directly in front of the segregation cell, he went limp and refused to go into the cell. *Id.* Corporal Espinoza thus placed Mr. Jordan in an ERC. *Id.* Around 10:30 p.m., Mr. Jordan was removed from the ERC and placed in the segregation cell. *Id.*

Later that night, just before midnight, Sgt. Cecil was working in the processing area when deputies reported an issue with pounding in cell S1-1. ECF 31-1 at 3. Sgt. Cecil went to the S1 segregation block and observed the cell block was flooded, and was told the problem was Mr. Jordan in cell S1-1. *Id.* Sgt. Cecil walked to the cell and found Mr. Jordan yelling incoherently. *Id.* at 4. Sgt. Cecil told Mr. Jordan he was going to place him in the ERC, and Mr. Jordan complied with his commands. *Id.* Once Mr. Jordan was secured in the ERC, Sgt. Cecil escorted him to the S2 dayroom so the flood in S1 could be cleaned up. *Id.* Mr. Jordan stated he was going to continue to "turn this bitch up every day" by flooding the cell block and being an issue for staff. *Id.* at 4. At 4:30 a.m. Sgt. Cecil checked on Mr. Jordan and found he was still uncooperative and refused to answer questions, so he concluded Mr. Jordan was not ready to be removed from the ERC. *Id.*

Around 8:00 a.m. the next morning, Corporal Mace checked on Mr. Jordan in the ERC and found he was shaking violently, yelling profanities, and threatening jail staff. ECF 31-2 at 1. Corporal Mace determined Mr. Jordan couldn't be released from the ERC at that time because his behavior was uncontrollable and he posed a threat to staff. *Id.* at 1-2. About two hours later, Corporal Mace again checked on Mr. Jordan and found he'd calmed down and was able to have a constructive conversation. *Id.* Mr. Jordan took accountability and apologized for how he acted toward jail staff and agreed to cooperate if he was removed from the ERC. *Id.* at 2-3. Corporal Mace removed Jordan from the ERC and returned him to his cell. *Id.*

Here, there's no evidence by which a reasonable jury could conclude Sgt. Cecil used "objectively unreasonable" force against Mr. Jordan by placing him in an ERC on

6

February 8, 2023. Specifically, it's undisputed that (1) Mr. Jordan was initially placed in an ERC by Corporal Espinoza because he resisted being placed in a segregation cell; (2) less than two hours after Mr. Jordan was released from the ERC by Corporal Espinoza, Sgt. Cecil placed him back in an ERC because he had flooded the segregation block and was yelling incoherently in his cell; (3) once Mr. Jordan was restrained in the ERC by Sgt. Cecil, he stated he was going to continue flooding the cell block and causing disruptions; (4) Sgt. Cecil evaluated Mr. Jordan at 4:30 a.m. and found he was not ready to be removed from the ERC because he was still uncooperative; (5) Corporal Mace checked on Mr. Jordan around 8:00 a.m. and found he was not ready to be removed from the ERC because he was uncontrollable and threatening staff; and (6) Corporal Mace removed Mr. Jordan from the ERC around 10:30 a.m. once he'd calmed down and agreed to cooperate.

Based on this evidence, it was objectively reasonable for Sgt. Cecil to place Mr. Jordan in the ERC in response to his flooding the segregation block, threatening to cause more floods, and yelling incoherently. *See Cibulka*, 448 F. Supp. 3d at 1024; *Rice v. Correctional Medical Servs.*, 675 F.3d at 668. And because it's undisputed that Mr. Jordan continued to act in a disruptive manner while he was restrained in the ERC by threatening staff and threatening to cause more floods, he hasn't shown it was objectively unreasonable to keep him in the ERC until he calmed down and agreed to cooperate. *See Washington v. Ondrejka*, 822 F. Appx. 104, 107-08 (3d Cir. 2020) (placing inmate in restraint chair for five hours was not excessive where inmate refused orders and resisted correctional officers); *Blakeney v. Rusk Cty. Sheriff*, 89 F. Appx. 897, 898-99 (5th Cir. 2004) (pre-trial detainee's rights were not violated by placing him in a restraint chair for twenty

hours after he disobeyed orders and engaged in unruly, destructive practices, as the purpose was to restrain him rather than punish him). Thus, because there's no evidence by which a reasonable jury could conclude Sgt. Cecil violated Mr. Jordan's Fourteenth Amendment rights by placing him in an ERC on February 8, 2023, summary judgment is warranted in favor of Sgt. Cecil on this claim.

For these reasons, the court:

(1) GRANTS Sgt. Cecil's motion for summary judgment (ECF 30); and

(2) DIRECTS the clerk to enter judgment in favor of Sgt. Cecil and against Victor L. Jordan and to close this case.

SO ORDERED.

December 10, 2024                              *s/ Damon R. Leichty*
                                                             Judge, United States District Court